## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

ATTORNEY GENERAL DANA NESSEL, on behalf of the People of the State of Michigan, and the STATE OF MICHIGAN,

Plaintiffs,

v.

CHEMGUARD, INC., TYCO FIRE PRODUCTS, LP, NATIONAL FOAM, INC., ANGUS FIRE ARMOUR CORPORATION, KIDDE P.L.C., INC., KIDDE-FENWAL, INC., RAYTHEON TECHNOLOGIES CORPORATION, UTC FIRE & SECURITY AMERICAS CORPORATION, INC., VULCAN FIRE SYSTEMS, INC., HUNTINGTON LABORATORIES, INC., ECOLAB INC., MINE SAFETY APPLIANCES COMPANY, LLC, VERDE ENVIRONMENTAL, INC., a/k/a MICRO-BLAZE, INC., HARTFORD CHEMICAL SALES CORPORATION, G.V.C. CHEMICAL CORPORATION, STEVENS COMPANY, INC., HAZARD CONTROL TECHNOLOGIES, INC., FIRE-ADE, INC., ROCKWOOD SYSTEMS, INC., f/k/a ROCKWOOD SYSTEMS CORPORATION, COBRA FIRE PROTECTION, INC., BROCO PRODUCTS, INC., PIONEER PRODUCTS, INC., DENKO, INC., a/k/a DENKO FOAM, INC., RUSSELL MARTIN INDUSTRIES, Inc., DAWN CHEMICAL CORPORATION OF WISCONSIN, INC., AMEREX CORPORATION, PERIMETER SOLUTIONS LP, NOBLE INDUSTRIAL SUPPLY CORPORATION, ROYAL CHEMICAL COMPANY, VST CHEMICAL CORPORATION, SUMMIT ENVIRONMENTAL CORPORATION, INC., FIRE SERVICES PLUS, INC., BUCKEYE FIRE EQUIPMENT COMPANY.,

Defendants.

Civil Action No. _____

**NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

1

Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, to the United States District Court for the Western District of Michigan.  As grounds for removal, Tyco and Chemguard state as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold Tyco, Chemguard, and certain other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others in accordance with the military's rigorous specifications.  The facts alleged in the Complaint show that the indivisible injuries alleged by Plaintiffs (*see* Ex. A, Compl. ¶ 369) likely stem in part from the use of such AFFF.  Accordingly, Tyco and Chemguard intend to assert the federal "government contractor" defense in response to Plaintiffs' claims.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

2.      This action was filed on August 20, 2020, in the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, bearing Case No. 20-458-CE.  Ex. A, Compl.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 102 and 1441(a) because the State of Michigan

Circuit Court for the 30th Judicial Circuit, Ingham County, is located within the Western District of Michigan.

3.      On October 9, 2020, Tyco received the initial Summons and Complaint (Ex. A). There have been no further proceedings in this action in the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County.

4.      Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245 (S.D.N.Y. 1994).

5.      Plaintiffs generally allege that Defendants (including Tyco and Chemguard) have manufactured, marketed, and sold "Commercial AFFF" products containing per- and polyfluoroalkyl substances (PFAS), including perfluorooctane sulfonate (PFOS), perfluoro-octanoic acid (PFOA), these chemicals' "salts, ionic states, and acidic forms of molecules, as well as their 'precursor' chemicals,'" and their by-products, which AFFF products were used or discharged at various sites throughout the State of Michigan.  (Compl. at 1, ¶¶ 3, 24).  Plaintiffs further allege that these PFAS chemicals have contaminated the State's natural resources, including its "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United State, the State [of Michigan] or the Tribes."  (*Id.* ¶¶ 235–237).

6.      Plaintiffs assert claims for liability under Michigan's Natural Resources and Environmental Protections Act ("NREPA") (*id.* ¶¶ 292–341), trespass (*id.* ¶¶ 342–356), public

nuisance (*id.* ¶¶ 357–370), and unjust enrichment (*Id.* ¶ 371–377).  Plaintiffs also seek statutory penalties and fines.  (Compl. at 74).

7.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County.

8.      By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9.      Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

10.     If any question arises as to the propriety of the removal of this action, Tyco and Chemguard request the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

11.     Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"  *Durham*, 445 F.3d at 1251.  *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135.

12.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original, internal quotation marks omitted).

13.     All requirements for removal under § 1442(a)(1) are satisfied here.  *See, e.g., Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and other manufacturers of AFFF).  In fact, in cases quite similar to this one, the judge overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has found several times that removal under § 1442 was proper.  *See* Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1") at 3–6 (removal requirements satisfied because Tyco demonstrated that it manufactured AFFF under the guidance of the U.S. military); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2") at 3–5 (removal requirements satisfied where plaintiff's claims based in

part on AFFF use at Part 139 airport); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3") at 3–6 (same).  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, is properly removed to federal court.[1]

## A.    MilSpec AFFF

14.    Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.  Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 *and USS Enterprise* in 1969.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command.  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified

---

[1]  Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL, where Plaintiffs' federal PFAS action is currently pending.

[2]  *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3]  U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[4]  The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA, PFOS, and Short-Chain PFAS—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

17. So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.

---

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] Dep't of Defense SD-6, at 1.

See 14 C.F.R. § 139.1 (2019).  The federal government requires Part 139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil F 24385F."[7]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[8]  The FAA explained:

> There are several reasons for this requirement.  First of all, AFFF has to be compatible when mixed.  AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible.  AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer.  Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire.  Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[9]

18.     On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

19.     Plaintiffs allege generally that their claims relate to contamination caused by "Commercial AFFF" only, and not to contamination caused by "MilSpec AFFF."  (Compl. ¶¶ 5–6, 10).  However, despite Plaintiffs' evident attempt to plead around federal officer jurisdiction,

---

[7] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

Plaintiffs nonetheless seek to recover damages and remedies for alleged indivisible injuries caused by PFAS contamination, which Plaintiffs' allegations make clear could have been caused in part by the use of MilSpec AFFF.[11] Tellingly, the factual allegations asserted in the Complaint demonstrate that it is plausible that PFAS from MilSpec AFFF (and not solely from "Commercial" AFFF) is a cause of the indivisible injuries that Plaintiffs allege.

20.     Plaintiffs allege that PFAS "readily migrate in soil, surface water, and groundwater," and that "once these chemicals are released into the environment, they migrate into and cause extensive contamination and injury to State natural resources and property." (Compl. ¶¶ 163–164). Plaintiffs also allege that PFAS in the State of Michigan "continues to move through groundwater, surface waters, soils, and other natural resources, and cause contamination in new locations, adversely impacting State natural resources and property." (*Id.* ¶ 237). Upon information and belief, PFAS from MilSpec AFFF used throughout the State of Michigan is a source of the alleged PFAS contamination that gives rise to Plaintiffs' alleged indivisible injuries, including the alleged contamination of State natural resources.

21.     Plaintiffs assert that their claims cover "any site within the State where Commercial AFFF has been detected, or in the future will be detected, and where PFAS from Commercial

_____

[11] Plaintiffs have expressly alleged elsewhere that the alleged PFAS contamination detected at locations throughout the State of Michigan stem at least in part from the use of MilSpec AFFF. On August 20, 2020—the same day Plaintiffs filed the instant Complaint in the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County—Plaintiffs filed in this United States District Court an action asserting claims for injuries caused by PFAS from MilSpec AFFF throughout the State of Michigan allegedly caused by use of MilSpec AFFF. (*See* Ex. B, *Nessel v. E.I. DuPont de Nemours and Co., et al.*, No. 1:20-cv-00787, ECF No. 1 "Federal PFAS Complaint"). Plaintiffs' Federal PFAS Complaint is substantially similar to the instant Complaint—Plaintiffs assert many of the exact same factual allegations concerning the same locations included in the instant state-court Complaint, assert in part the same causes of action against the same Defendants, and seek in part the same remedies for the alleged PFAS contamination detected throughout the State of Michigan. (*Compare* Ex. A (Compl.) *with* Ex. B (Federal PFAS Complaint)).

AFFF has been or will be detected above Michigan's current clean up criteria." (*Id.* ¶ 239). Plaintiffs also assert claims covering the State of Michigan's "natural resources," such as "the State's surface waters" and "Michigan's Great Lakes." (*See, e.g.*, *id.* ¶¶ 268–273, 280–282). The sites covered in Plaintiffs' Complaint overlap at least in part (if not entirely) with the sites identified in Plaintiffs' Federal PFAS Complaint—Plaintiffs seek damages and remedies for alleged PFAS contamination "at locations and/or properties throughout the State" in their Federal PFAS Complaint (Ex. B ¶ 291), while the instant state-court Complaint seeks damages and remedies for alleged PFAS contamination "at locations and/or properties throughout the State" excepting federal lands, federal enclaves, and non-military airports only (Compl. ¶ 234). Given that Plaintiffs' own allegations indicate that Commercial and MilSpec AFFF may be present at the same sites, there is no feasible way for Plaintiffs to divide their alleged injuries between MilSpec and Commercial AFFF. Further, upon information and belief, and given the alleged propensity of PFAS to migrate in the environment, PFAS from MilSpec AFFF is co-located with PFAS from Commercial AFFF at some of the sites covered by Plaintiffs' claims.

22. The factual allegations supporting Plaintiffs' claims of widespread PFAS contamination throughout the State of Michigan stem in part from a "Statewide PFAS Sampling Program in 2018." (*See* Compl. ¶¶ 211–215, 219). Upon information and belief, and consistent with Plaintiffs' allegations in its separate complaints , PFAS from certain MilSpec AFFF products used throughout the State of Michigan constitute at least a portion of the alleged PFAS contamination detected through the State's PFAS Sampling Program, which serves as the factual basis for Plaintiffs' claims.

**B.**     **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

**1.**     **The "Person" Requirement Is Satisfied**

23.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard (a corporation) are "persons" under the statute.  For purposes of § 1442(a)(1), the term "'person'" includes "'companies, associations, firms, [and] partnerships.'"  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Bennett*, 607 F.3d at 1085 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)); *Isaacson*, 517 F.3d at 135–36 (same).

**2.**     **The "Acting Under" Requirement Is Satisfied**

24.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted).  "The words 'acting under' are to be interpreted broadly."  *Id.* at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  *Papp*, 842 F.3d at 813.

25.     The requirement is met here because Plaintiffs' claims, at least in part, challenge Tyco's and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself."  *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the

chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12]  Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF.  *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *see also* MDL Order 1 at 3–6 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2 at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3 at 3–6 (same).  If Tyco, Chemguard, and other manufacturers did not provide MilSpec AFFF for use at Part 139 airports, the government would have to manufacture and provide the product itself.

26.     In designing, manufacturing and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[13]

### 3.     The Causation Requirement Is Satisfied

27.     The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement."  *Isaacson*, 517 F.3d at 137

---

[12] *Fulfilling the Roosevelts' Vision* at 37.

[13] *See* Dep't of Defense, SD-6, at 1.

(alteration, citation, and internal quotation marks omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[14]

28.     "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties." *Id.* at 137–38. Here, the Plaintiffs' claims arise at least in part from Tyco's and Chemguard's production and sale of AFFF manufactured to military specifications for use at military bases and Part 139 airfields within the State of Michigan. Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries. Tyco and Chemguard contend that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the Department of Defense. Military installations and Part 139 airports are required to employ MilSpec AFFF. The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1 at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2 at 5 (finding the causation element of federal officer removal satisfied where

_____

[14] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

Tyco/Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airport); MDL Order 3 at 5–6 (same as to MilSpec AFFF used at a single airport).

### 4. The "Colorable Federal Defense" Requirement Is Satisfied

29. The fourth requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense.

30. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original, citation omitted). A "defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Bennett*, 607 F.3d at 1089 ("[A] colorable federal defense need only be plausible . . . [and] a district court is not required to determine its validity at the time of removal.") (internal citation omitted); *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).[15] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa.

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (citations omitted)).

2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted); *see also Bennett*, 607 F.3d at 1090–91.

31.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

32.     Tyco and Chemguard have satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1 at 5 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2 at 4 (same, as to Tyco/Chemguard); MDL Order 3 at 5 (same, as to Tyco/Chemguard).

33. Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[16] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[17] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[19] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows

---

[16] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.

[19] *Id.* § 6.6 & Tables 1, 3.

of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1 at 5 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

34.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

WHEREFORE, Tyco and Chemguard hereby remove this action from the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, to this Court.

Dated: November 9, 2020

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Nicholas J. Ellis*
Ann Marie Uetz (P48922)
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
auetz@foley.com
nellis@foley.com

Peter A. Tomasi (P82717)
777 E. Wisconsin Avenue, Suite 3800
Milwaukee, WI 53202-5306
(414) 297-5621
ptomasi@foley.com

*Counsel for Tyco Fire Products, LP &*
*Chemguard, Inc.*

**CERTIFICATE OF SERVICE**

I certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were or

will be served on all parties via first class mail on November 9 and 10, 2020:

***Plaintiffs***

Amy E. Keller (P74015)
Adam J. Levitt
Special Assistant Attorneys General
Daniel R. Flynn
Laura E. Reasons
Mary McKenna
Adam Prom
DiCello Levitt Gutzler LLC
10 North Dearborn Street, 6th Floor
Chicago, IL 60602
(312) 214-7900
akeller@dicellolevitt.com
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

*Counsel for Plaintiffs*

Gregory M. Utter
Joseph M. Callow, Jr.
Special Assistant Attorneys General
Sarah V. Geiger
Collin L. Ryan
Joseph B. Womick
Keating Muething & Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

*Counsel for Plaintiffs*

Richard W. Fields
Special Assistant Attorney General
Martin F. Cunniff
Fields PLLC
1901 L St., N.W.
Suite 700
Washington, D.C. 20036
Fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com

*Counsel for Plaintiffs*

Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney
General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

*Counsel for Plaintiffs*

## **_Defendants_**

| Defendant | Address |
|---|---|
| NATIONAL FOAM, INC. | 144 Junny Road |
| | Angier, North Carolina 27501 |
| ANGUS FIRE ARMOUR CORPORATION | c/o The Prentice-Hall Corporation System, Inc. |
| | 251 Little Falls Drive |
| | Wilmington, Delaware 19808 |
| KIDDE P.L.C., INC. | c/o The Corporation Company |
| | 40600 Ann Arbor Road East, Suite 201 |
| | Plymouth, Michigan 48170 |
| KIDDE-FENWAL, INC. | c/o The Corporation Company |
| | 40600 Ann Arbor Road East, Suite 201 |
| | Plymouth, Michigan 48170 |

| | |
|---|---|
| RAYTHEON TECHNOLOGIES CORPORATION | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| UTC FIRE & SECURITY AMERICAS CORPORATION, INC. | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| VULCAN FIRE SYSTEMS, INC. | c/o CSC-Lawyers Incorporating Service Company<br>601 Abbot Road<br>East Lansing, Michigan 48823 |
| HUNTINGTON LABORATORIES, INC. | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| ECOLAB INC. | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| MINE SAFETY APPLIANCES COMPANY, LLC, | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| VERDE ENVIRONMENTAL, INC., a/k/a MICRO-BLAZE, INC. | c/o The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 |
| HARTFORD CHEMICAL SALES CORPORATION, | 2001 Marcus Avenue<br>Lake Success, New York 11042 |
| G.V.C. CHEMICAL CORPORATION | 29 Front Street<br>East Rockaway, New York 11518 |
| STEVENS COMPANY, INC. | c/o Barbara Culham<br>15460 Trans-X Road<br>Novi, Michigan 48375 |
| HAZARD CONTROL TECHNOLOGIES, INC., | c/o Gerda M. Benson<br>500 South Beach Road<br>Hobe Sound, Florida 33455 |
| FIRE-ADE, INC., | c/o Rhonda K. Clodfelter<br>2615 Motsinger Road<br>Winston Salem, North Carolina 27107 |
| ROCKWOOD SYSTEMS, INC., f/k/a ROCKWOOD SYSTEMS CORPORATION | 17 Allen Lane<br>Sloatsburg, New York 10974 |
| COBRA FIRE PROTECTION, INC. | c/o Registered Agents Inc.<br>4445 Corporation Lane, Suite 264<br>Virginia Beach, Virginia 23462 |

| | |
|---|---|
| BROCO PRODUCTS, INC. | c/o Stephen C. Brown<br>18624 Syracuse Avenue<br>Cleveland, Ohio 44119 |
| PIONEER PRODUCTS, INC. | c/o Lipstein & Associates, Inc.<br>388 South Oyster Bay Road<br>Hicksville, New York 11801 |
| DENKO, INC., a/k/a DENKO FOAM INC. | P.O. Box 1236<br>Elmira, New York 14902 |
| RUSSELL MARTIN INDUSTRIES, Inc. | 888 Ocean Street<br>Baldwin Harbor, New York 14410 |
| DAWN CHEMICAL CORPORATION OF WISCONSIN, INC. | 3325 W. Kiehnau Avenue<br>Milwaukee, Wisconsin 53209 |
| AMEREX CORPORATION | 7595 Gadsden Highway<br>Trussville, Alabama 35173 |
| PERIMETER SOLUTIONS LP | c/o CT Corporate System<br>120 S. Central Avenue<br>Clayton, Missouri 63105 |
| NOBLE INDUSTRIAL SUPPLY CORPORATION | c/o Fine & Bassik, Esqs.<br>316 Great Neck Road<br>Great Neck, New York 11021 |
| ROYAL CHEMICAL COMPANY | c/o The Corporation Company<br>40600 Ann Arbor Road East, Suite 201<br>Plymouth, Michigan 48170 |
| VST CHEMICAL CORPORATION | 20 Woods Road<br>Yulan, New York 12792 |
| SUMMIT ENVIRONMENTAL CORPORATION, INC. | 610 West Rawson Avenue<br>Oak Creek, Wisconsin 53154 |
| FIRE SERVICES PLUS, INC. | c/o Ronald E. Thames<br>180 Etowah Trace<br>Fayetteville, Georgia 30214 |
| BUCKEYE FIRE EQUIPMENT COMPANY. | c/o A Haon Corporate Agent, Inc.<br>29225 Chagrin Boulevard, Suite 350<br>Pepper Pike, Ohio 44122 |

Respectfully submitted,

FOLEY & LARDNER LLP

By: */s/ Nicholas J. Ellis*
Nicholas J. Ellis (P73174)
*Counsel for Tyco Fire Products, LP &*
*Chemguard, Inc.*