UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTORNEY GENERAL DANA NESSEL, on
behalf of the People of the State of Michigan, and
the STATE OF MICHIGAN,

No. 1:20-cv-01080

      Plaintiffs,

HON. PAUL L. MALONEY

MAG. RAY KENT

v

CHEMGUARD, INC., *et al.*

**PLAINTIFFS' BRIEF IN
SUPPORT OF MOTION TO
REMAND**

      Defendants.

---

Dana Nessel
Attorney General
Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

Adam J. Levitt*
Amy E. Keller (P74015)
Special Assistant
Attorneys General
Daniel R. Flynn*
Laura E. Reasons*
Mary McKenna*
Adam Prom
DiCello Levitt Gutzler LLC
Ten North Dearborn Street,
Sixth Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

---

Gregory M. Utter*
Joseph M. Callow, Jr.*
Special Assistant Attorneys
General
Matthew M. Allen*
Sarah V. Geiger*
Collin L. Ryan*
Joseph B. Womick*
Keating Muething &
Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields *
Special Assistant Attorney General
Martin F. Cunniff*
Fields, PLLC
1901 L St., N.W. Suite 700,
Washington, D.C. 20036
(800) 878-1432
fields@fieldslawpllc.com
martincunniff@fieldslawpllc.com


* *pro hac vice* motion to be filed

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

I.     PFAS, Mil-Spec AFFF, and Commercial AFFF............................................. 2

II.    Michigan's Actions to Address PFAS Contamination. ..................................... 3

      A.     Michigan's PFAS Investigation. ........................................................ 3

      B.     Michigan's Legal Actions. ................................................................ 4

ARGUMENT ........................................................................................................ 9

I.     Legal Standard. ........................................................................................ 10

II.    This Court does not have jurisdiction over this matter under the
federal officer removal statute.................................................................. 11

      A.     Tyco and Chemguard fail to satisfy the "acting under" prong of
the federal officer removal statute. ................................................ 12

      B.     Defendants did not produce and/or sell Commercial AFFF under
color of federal office................................................................... 18

      C.     Defendants do not have a colorable claim that the government
contractor defense applies to the complaint in this matter.............. 19

      D.     Allowing Defendants to invoke the federal officer removal
statute in this matter does not serve the statute's purpose. ............ 24

III.   Attorneys' fees are appropriate under the circumstances of Defendants'
removal. .................................................................................................. 25

CONCLUSION.................................................................................................... 27

CERTIFICATE OF COMPLIANCE ....................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayo v. 3M Co.,*
  *2018 WL 4781145 (E.D.N.Y Sep. 20, 2018)* ......................................................... 21

*In re "Agent Orange" Product Liability Litigation,*
  304 F. Supp. 2d 404 (E.D.N.Y. 2004) ..................................................................... 21

*In re "Agent Orange" Prod. Liab. Lit.,*
  304 F. Supp. 2d 442 (E.D.N.Y. 2004) ..................................................................... 21

*In re 3M Combat Arms Earplug Prods Liab Litig,*
  No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 131951 (N.D. Fl. July 24,
  2020)..................................................................................................... 12, 20, 21, 22

*Bennett v. MIS Corp.,*
  607 F.3d. 1076 (6th Cir. 2010) ................................................................... 12, 18, 19

*Boyle v. United Techs. Corp.,*
  487 U.S. 500 (1988) ................................................................................... 20, 21, 22

*Carter v. Monsanto Co.,*
  635 F. Supp. 2d 479 (S.D. W. Va. 2009)................................................................. 16

*City of Cookeville v. Upper Cumberland Elec. Membership Corp.,*
  484 F.3d 380 (6th Cir. 2007) .................................................................................. 19

*Daleske v. Fairfield Communities, Inc.,*
  17 F.3d 321 (10th Cir. 1994) .................................................................................. 26

*Eastman v. Marine Mech. Corp.,*
  438 F.3d 544 (6th Cir. 2006) ............................................................................ 10, 11

*Harnden v. Jayco, Inc.,*
  496 F.3d 579 (6th Cir. 2007) .................................................................................. 11

*Jefferson County v. Acker,*
  527 U.S. 423 (1999) ................................................................................................ 18

*Martin v. Franklin Capital Corp.,*
  546 U.S. 132 (2005) ................................................................................................ 26

*Mobley v. Cerro Flow Prods.*,
  No. 09-697-GPM, 2010 U.S. Dist. LEXIS 524 (S.D. Ill. Jan. 5, 2010) .................. 16

*Papp v. Fore-Kast Sales Co*,
  842 F.3d 805 (3rd Cir. 2016) .......................................................... 13, 15

*Pittsburgh Inst. of Aero. v. Allegheny Cty. Airport Auth.*,
  No. 2:07-cv-1638, 2008 U.S. Dist. LEXIS 46613 (W.D. Pa. June 16,
  2008).................................................................................................. 13, 17

*Watson v. Philip Morris Cos.*,
  551 U.S.142 (2007) .......................................................................*passim*

**Statutes**

28 U.S.C. § 1441.................................................................................. 10, 11

28 U.S.C. § 1442........................................................................ 7, 11, 12, 19

28 U.S.C. § 1447........................................................................... 1, 11, 26

Mich. Comp. Laws § 324.1701(1) ................................................................ 17

Mich. Comp. Laws § 324.3115(1) ................................................................ 17

Mich. Comp. Laws § 324.3109(1) ................................................................ 17

Mich. Comp. Laws § 324.20126(1)(a) & (d)................................................... 17

Plaintiffs, Attorney General Dana Nessel, on behalf of the People of the State of Michigan, and the State of Michigan (collectively, State or Michigan), pursuant to 28 U.S.C. § 1447(c), hereby move to remand this action back to the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, and to recover reasonable attorneys' fees and costs incurred as a result of this removal, and in support of this motion, state as follows:

## PRELIMINARY STATEMENT

Plaintiffs brought this suit in Michigan state court to recover costs and damages under Michigan state laws related to per- and polyfluoroalkyl substances (PFAS) contamination caused exclusively by a product known as Commercial AFFF. Defendant Tyco Fire Products LP (Tyco) and Defendant Chemguard, Inc. (Chemguard) (collectively, Defendants) base the Notice of Removal solely on the intended assertion of the "government contractor" defense to the State's claims stemming from contamination caused by aqueous film-forming foam (AFFF) "developed for sale to the United States military and others in accordance with the military's rigorous specifications" (Mil-Spec-AFFF).  (ECF No. 1, PageID.2.)

Significantly, and perhaps with dispositive effect, Defendants largely ignore the State's separate action that it filed in this Court against Defendants for contamination caused by Mil-Spec AFFF.  While Defendants may be able to assert a government contractor defense in the State's Mil-Spec AFFF litigation, that defense is legally and factually unavailable in this Commercial AFFF litigation. Defendants

1

cannot implicitly consolidate the two complaints and remove this litigation based on a purported affirmative defense that only exists in one of the two cases.

Further, the State's Complaint brings only common law and State environmental law claims for the *release* of Commercial AFFF.  The Complaint does not assert a products liability claim.  Precedent is clear that while the government contractor defense may apply to a claim for products liability based on improper design, it is not a viable defense to common law and environmental claims for a defendant's release or pollution.

Federal jurisdiction does not exist in this matter.  This court should thus remand this action to the Michigan Circuit Court for the 30th Judicial Circuit, Ingham County.

## BACKGROUND

### I.      PFAS, Mil-Spec AFFF, and Commercial AFFF.

PFAS are a family of more than 5,000 chemical compounds containing strong carbon-fluorine bonds.  (ECF No. 1, PageID.39.)  These synthetic chemicals do not occur naturally in the environment and have been in use since the 1940s in a wide array of consumer and industrial products, including in aqueous film-forming foam and related products (AFFF).  (*Id*.)

AFFF was developed to fight flammable liquid fires.  (ECF No. 1, PageID.38).  On one hand, AFFF purchased by the Department of Defense (DOD) or used at FAA-regulated airports must meet performance standards set out in MIL-F-24385.  This is known as Mil-Spec AFFF.  (ECF No. 1, PageID.35.)

2

On the other hand, AFFF sold to and used by state, local, and private fire departments and brigades and used in some industrial fire suppression systems must meet Underwriters Laboratory (UL) specifications such as UL 162.  This is known (and referred to herein) as Commercial AFFF.  Commercial AFFF *is not* designed and/or manufactured to conform to military specification Mil-F-24385.  Mil-Spec performance and quality control specifications do not govern or apply to the design, production, sale, or use of Commercial AFFF.  Commercial AFFF *is not* distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or used in Michigan at the direction of the official authority of the United States Government or any of its federal agencies.  (ECF No. 1, PageID.36, 38–39.)

Mil-Spec AFFF and Commercial AFFF are not interchangeable.  They consist of two distinct types of AFFF firefighting foams, each with unique chemical compositions and formulas.  Although both have contaminated Michigan's environment and natural resources, Michigan's efforts to investigate and address PFAS contamination have confirmed that each has been discharged into Michigan's environment from separate, distinct, and identifiable sources.

## II.     Michigan's Actions to Address PFAS Contamination.

### A.     Michigan's PFAS Investigation.

The State of Michigan has emerged as a global leader in investigating and addressing contamination resulting from PFAS.  Michigan has developed a sophisticated, multi-faceted, science-based approach to address PFAS

contamination from all sources throughout the State.  The cornerstone of Michigan's efforts to protect its residents and its environment is the Michigan PFAS Action Response Team (MPART).  MPART was created to be "an established, enduring body to address the threat of PFAS contamination in Michigan, protect public health, and ensure the safety of Michigan's land, air, and water, while facilitating inter-agency coordination, increasing transparency, and requiring clear standards to ensure accountability."  (ECF No. 1, PageID.73, fn. 24.)

Immediately after its formation, MPART began a series of investigations and collected sampling data to identify, characterize, and address risks to the State's public health, safety, welfare, natural resources and the environment as quickly as possible.  (ECF No. 1, PageID.72–77).

Although widespread, the PFAS contamination found throughout the State of Michigan is separate and distinct.  Defendants' assertion that AFFF contamination is somehow indivisible may be their argument, but it is wholly inaccurate.  MPART has already employed multiple strategies to identify and distinguish the sources of PFAS contamination it has thus far discovered, and the State's experts will address this issue at the appropriate time in the litigation.  Defendants' assertions, however, do not control or supersede the allegations in the State's Complaints.

### B.   Michigan's Legal Actions.

States generally have an interest and a Constitutional right to bring actions to protect their residents and environment under their own state laws and before their own state courts.  As part of its overall approach to address PFAS

contamination throughout the State, Michigan has initiated multiple legal actions to hold companies accountable for their culpable conduct related to their distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or other release of PFAS.

Michigan first filed suit in January 2020 against PFAS manufacturers to recover costs and damages, exclusively under Michigan state laws, related to PFAS contamination from industrial and other non-AFFF sources.  That matter remains pending in the Michigan Circuit Court for the 17th Judicial Circuit in Kent County, Michigan.

In August, Michigan filed two additional complaints related to AFFF contamination.  First, Michigan filed a complaint, under both state and federal laws, concerning contamination caused exclusively by Mil-Spec AFFF.  Michigan filed that case before this Court because that matter involved a federal claim under the Resource Conservation and Recovery Act.  Michigan discusses Mil-Spec AFFF at issue in that Complaint:

- The purpose of Mil-F-24385 is to obtain a product that rapidly controls and contains fuel-based fires.  It is a procurement specification and a performance specification, but it is not a manufacturing or product specification.  (ECF No. 1, PageID.124.)

- Mil-F-24385 calls for Mil-Spec AFFF to include "fluorocarbon surfactants plus other compounds as required to conform to the requirements specified."  (See e.g. Mil-F-24385 Amendment 1 (1994) at § 1, 1.  (ECF No. 1, PageID.124.)

- MIL-F-24385 is not a manufacturing spec.  Defendants had complete control over what specific fluorinated surfactant they chose in their proprietary formulation and the methods and

procedures for making their products.  Defendants established the manufacturing specifications and the product quality specifications of their product based on meeting MIL-F-24385's product performance specifications.  (ECF No. 1, PageID.124–125.)

- There are thousands of "fluorocarbon surfactants."  There was no requirement under Mil-F-24385 (or any of its amendments) for Defendants to use PFOA, PFOS, or other hazardous PFAS compounds in the manufacture of Mil-Spec AFFF.  (ECF No. 1, PageID.125.)

- Defendants, without direction from DOD or any federal agency, unilaterally chose to include PFOA, PFOS and/or other hazardous PFAS compounds as the "fluorocarbon surfactants" called for under Mil-F-24385.  Defendants could have chosen to use non-hazardous "fluorocarbon surfactants" when manufacturing Mil-Spec AFFF, but chose not to do so.  (ECF No. 1, PageID.125.)

- Defendants had complete control over what specific fluorinated surfactant they chose in their proprietary formulation and the methods and procedures for making Mil-Spec AFFF.  (ECF No. 1, PageID.125.)

- Defendants chose to utilize PFOA, PFOS, and other hazardous PFAS compounds in Mil-Spec AFFF and failed to warn and share information with all of its customers, including the DOD, on the impacts of their products on the environment.  (ECF No. 1, PageID.125.)

- No federal agency has ever instructed any Defendant to prepare a specific formulation of Mil-Spec AFFF other than to insist that one of the ingredients to be included in a formulation of Mil-Spec AFFF be comprised of a fluorinated surfactant, which is a broad family of ingredients that are numbered in the thousands.  (ECF No. 1, PageID.125-126.)

- DOD and its related agencies did not develop Mil-Spec AFFF products.  DOD and its related agencies developed a product performance specification and were not directly involved design of formulations and the compositions of Mil-Spec AFFF.  (ECF No. 1, PageID.126.)

6

- Defendants developed their own proprietary Mil-Spec AFFF formulations and established their own product and manufacturing specifications—none of which DOD or any other federal agency had anything to do with. Defendants withheld critical information on how to manage the toxic wastes of their Mil-Spec AFFF by hiding behind trade secret protections. (ECF No. 1, PageID.126.)

- Historically, DOD purchased Mil-Spec AFFF for use on military bases. This Complaint seeks to remedy contamination caused by the release of Mil-Spec AFFF and not any other type of AFFF. (ECF No. 1, PageID.126.)

Several Mil-Spec AFFF cases brought by other plaintiffs have been removed and consolidated into the AFFF MDL based on this government contractor defense. Although at least one recent decision has called into question the applicability of 28 U.S.C. § 1442 to cases involving Mil-Spec AFFF, Michigan deferred to the previous rulings in the AFFF MDL concerning federal court jurisdiction over actions involving Mil-Spec AFFF and did not object to the transfer of the Mil-Spec AFFF litigation to the MDL. If Defendants raise the government contractor defense related to their design, production, and sale of Mil-Spec AFFF in the Mil-Spec AFFF litigation, it would only be appropriate to do so in that matter and the State will address that issue through the AFFF MDL proceedings.

The second AFFF claim filed by Michigan is the instant suit, filed in the Michigan Circuit Court for the 30th Judicial Circuit in Ingham County. This suit against Commercial AFFF manufacturers seeks to recover costs and damages, exclusively under Michigan state laws, related solely to PFAS contamination from Commercial AFFF sources. In the instant complaint, Michigan **explicitly states**

7

that "[t]his Complaint *does not* seek to remedy contamination caused by the release

of Mil-Spec AFFF."  (ECF No. 1, PageID.36.)  The instant matter concerns only

PFAS contamination caused by Commercial AFFF, which Plaintiffs plead and

define as follows:

- Since the 1960s, Defendants have made Commercial AFFF available for use by private entities and state and local fire departments.  (ECF No. 1, PageID.38.)

- Commercial AFFF differs from Mil-Spec AFFF.  (ECF No. 1, PageID.38.)

- Commercial AFFF is Class B AFFF and it is not produced in accordance with, or required to be produced in accordance with, military specification Mil-F-24385.  (ECF No. 1, PageID.38.)

- Commercial AFFF includes AFFF produced in conformance with Underwriters Laboratory (UL) lab standards.  (ECF No. 1, PageID.38.)

- Mil-Spec performance and quality control specifications do not govern or apply to the sale or use of Commercial AFFF.  (ECF No. 1, PageID.38.)

Michigan explicitly excludes all contamination caused by Mil-Spec AFFF from this

case.  Moreover, the Commercial AFFF Complaint does not include product liability

claims—a legal pre-requisite to asserting a government contractor defense.  In fact,

the Commercial AFFF Complaint explicitly states that, "Michigan's claims *do not*

proximately relate to the production or design of Commercial AFFF.  Moreover, this

Complaint *does not* assert any products liability claims such as defective design,

manufacturing defects, labeling defects, or failure to warn."  (ECF No. 1,

PageID.36–37.)  The State's claims (liability under Michigan's Natural Resources

and Environmental Protection Act (NREPA), trespass, public nuisance, and unjust

enrichment) are not claims that legally or factually trigger a government contractor defense. Because Mil-Spec AFFF contamination is not and cannot be at issue in this matter, and because there are no product liability claims asserted in the Commercial AFFF Complaint, Defendants cannot raise the government contractor defense in this matter as a legal basis for removal and the Court does not have jurisdiction over this matter. This Court should consequently remand this action to the Michigan Circuit Court for the 30th Judicial Circuit, Ingham County and award the State its fees and costs associated with this motion

## ARGUMENT

Michigan's Commercial AFFF Complaint relates to PFAS contamination caused by Defendants' distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF. Not only does the Commercial AFFF Complaint specifically exclude the design and manufacture of, and any products liability claims related to *any* AFFF, but the Commercial AFFF at issue in this Complaint was also not designed, manufactured, or sold under the supervision or direction of the U.S. military. Michigan's Commercial AFFF Complaint cannot provide a basis for subject matter jurisdiction in this Court.

Michigan filed its complaint in this action against 33 manufacturers of Commercial AFFF, which contains hazardous PFAS. The State seeks to recover the funds and resources necessary for Michigan to continue identifying, monitoring, and addressing PFAS contamination caused solely by releases of Commercial AFFF at non-military, non-aviation, and non-tribal sites throughout the State through

9

exclusively state law claims for liability under Parts 201, 17 and 31 of Michigan's NREPA, trespass, public nuisance, and unjust enrichment. (ECF No. 1, PageID.37.)

None of the State's claims proximately relate to Defendants' design, production, or sale of Mil-Spec AFFF—or the design or production of Commercial AFFF. The federal officer removal statute, therefore, does not entitle Defendants to remove this matter to federal court because the federal contractor defense on which Defendants' Notice of Removal depends does not, and cannot, exist here. Additionally, because no federal question is presented on the face of this complaint and complete diversity of citizenship is lacking, this Court lacks original jurisdiction over this matter. This Court should, therefore, remand this matter to the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County.

## I.     Legal Standard.

As the parties seeking removal, Defendants Tyco and Chemguard bear the burden of establishing federal court jurisdiction, *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), and of demonstrating that removal is proper. 28 U.S.C. § 1441(a). Removal statutes are to be strictly construed, and "all doubts should be resolved against removal." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007); *see also Eastman*, 438 F.3d at 550. The Court "shall" remand cases in which it lacks jurisdiction. 28 U.S.C. § 1447(c).

**II.     This Court does not have jurisdiction over this matter under the federal officer removal statute.**

Defendants base the removal of this matter solely on the application of the federal officer removal statute, 28 U.S.C. §1442(a)(1), because Defendants have not, and cannot, remove this case under the general removal provisions of 28 U.S.C. § 1441.  The instant complaint does not raise any federal question that would create subject matter jurisdiction, nor does diversity jurisdiction exist, and furthermore Defendants do not have the consent of any other defendants to remove the case.

Without grounds to remove this matter under 28 U.S.C. § 1441, Defendants attempt to contort this case to one that would fall under the federal officer removal statute.  The federal officer removal statute, however, only provides for removal in cases against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  The federal officer removal statute's basic purpose is to protect federal officers from state court hostility toward the federal government or the enforcement of federal laws.  *Watson v. Philip Morris Cos.*, 551 U.S.142, 147–50 (2007).  The federal officer removal statute only authorizes removal by private parties if they are authorized to act with or for federal officers or agents in affirmatively executing duties under federal law.  *Watson*, 551 U.S. at 151.

"It cannot be seriously argued that the 'authority and duties of the United States as sovereign are intimately involved' in a private controversy surrounding the design of a product where no aspect of that design was the subject of a

procurement contract with the government." *In re 3M Combat Arms Earplug Prods Liab Litig*, 2020 U.S. Dist. LEXIS 131951, *32, CCH Prod. Liab. Rep. P20,943 (N.D. Fl. July 24, 2020).  Tyco and Chemguard are not federal officers.  As private companies, Defendants would only be entitled to removal under the federal officer removal statute if they could satisfy three requirements:  (1) Defendants must establish that they acted under a federal officer, (2) those actions must have been performed under color of federal office, and (3) Defendants must raise a colorable federal defense.  *Bennett v. MIS Corp.*, 607 F.3d. 1076, 1085 (6th Cir. 2010).

Defendants have not, and cannot, satisfy any of these three elements.  This Court lacks federal officer jurisdiction over this matter and must remand this case to state court.

### A.     Tyco and Chemguard fail to satisfy the "acting under" prong of the federal officer removal statute.

When a private entity invokes 28 U.S.C. § 1442(a)(1) as a basis for removal to federal court, it must demonstrate that it was "acting under" the direction of a federal officer or agency.  *Watson*, 551 U.S. at 151.  The "acting under" relationship typically involves "subjection, guidance, or control" by the federal officer/agency over the private entity.  *Watson*, 551 U.S. at 151.  The private entity's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.  *Watson*, 551 U.S. at 152.

"[T]o make a showing that one acted under a federal office, one must unequivocally demonstrate that it performed the activity complained of at the

direction of official federal authority and a federal officer had direct and detailed control over the activity." *Pittsburgh Inst. of Aero. v. Allegheny Cty. Airport Auth.*, No. 2:07-cv-1638, 2008 U.S. Dist. LEXIS 46613, at *3–4 (W.D. Pa. June 16, 2008) (emphasis added).  Some courts have "rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  (ECT No. 1, ¶ 11, PageID.4 (quoting *Papp v. Fore-Kast Sales Co,* 842 F.3d 805, 813 (3rd Cir.  2016).)  Even those courts, however, recognize that to satisfy the acting under prong of the federal officer removal statute, the plaintiff's allegations must be "directed at the relationship between the [defendant] and the [federal officer or agency]." *Papp* at 813 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457, 470 (3rd Cir.  2015)).

In this case, without supporting evidence, Defendants claim that they were "acting under" the direction and control of one or more federal officers when they designed, manufactured and supplied Mil-Spec AFFF products.[1]  This argument fails to support removal for two primary reasons.  First, the AFFF contamination at issue in this case relates *only* to Commercial AFFF products distributed, sold, released, supplied, transported, arranged for disposal or treatment, handled, and/or

---

[1] Aside from erroneously seeking federal officer jurisdiction based on the design, manufacture and supply of Mil-Spec AFFF, which is not at issue here (Plaintiffs' claims do not arise from the design or production of *any* AFFF), Defendants have also failed to provide a factual basis in support of their assertion that they were working under a federal officer/agency.  Defendants have not provided any affidavits, declarations or documents, including any relevant government contracts or specifications.

13

used by Defendants.  Commercial AFFF and Mil-Spec AFFF are two distinct types
of AFFF.  Each type has its own unique chemical compositions and formulas.
Commercial AFFF is designed to meet Underwriters Laboratory (UL) specifications
and *is not* designed and/or manufactured in accordance with military specification
Mil-F-24385.  The U.S. military's Mil-Spec performance and quality control
specifications do not govern or apply to the design, production, sale, or use of
Commercial AFFF.  Nor did the State of Michigan or its local fire departments
provide Defendants with specifications to govern the formulation, performance,
testing, storage, inspection, packaging, and/or labeling of Commercial AFFF
products, or require that their Commercial AFFF products conform to the
Department of Defense's Mil-Specs.  Commercial AFFF *is not* distributed, sold,
released, supplied, transported, arranged for disposal or treatment, handled, and/or
used in Michigan at the direction of the official authority of the United States
Government or any of its federal agencies.

Contamination caused by Defendants' Mil-Spec AFFF products is not at issue
in the instant action.  Contamination from all defendants' Mil-Spec AFFF products
is explicitly excluded from this complaint and is addressed in Michigan's separate
and distinct complaint currently pending in the MDL.[2]  Defendants' claim that the
State's Mil-Spec AFFF injuries are indivisible from the State's Commercial AFFF
injuries is demonstrably false.  As discussed above, MPART's PFAS investigatory

---

[2] *See In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No.
2:18-mn-2873-RMG, Case No. 2:20-cv-03307 (D.S.C.)

14

efforts to date have enabled the State to distinguish sources of Commercial AFFF

contamination from Mil-Spec AFFF contamination.  Michigan specifically

contemplated the divisible costs and injuries resulting from PFAS contamination

and initiated separate legal actions to hold companies accountable accordingly.

Secondly, even if Defendants did design or manufacture Commercial AFFF at

the behest of the federal government—which they did not—the State's claims "do

not proximately relate to the production or design of Commercial AFFF." (ECF No.

1, PageID.36.)  The State's Commercial AFFF Complaint "*does not* assert any

products liability claims such as defective design, manufacturing defects, labeling

defects, or failure to warn." (*Id.* (emphasis in original)).  Nor are the State's

allegations "directed at the relationship between the [defendant] and the [federal

officer or agency]." *Papp*, 842 F.3d at 813.

Courts have consistently held in the federal officer removal statute context

that claims related to the disposal of hazardous substances are materially distinct

from claims related to the design or manufacture of hazardous substances.  "[T]he

government's control over certain aspects of production cannot provide a basis for

federal officer removal for an action asserting claims solely based on the defendants'

waste disposal practices because there is no causal nexus between the production

[and the disposal practices]." *Carter v. Monsanto Co.,* 635 F. Supp. 2d 479, 497

(S.D. W. Va. 2009).  When the plaintiff presents disposal but not product liability

claims, and the defendants remove the case to federal court, the federal court

should remand the case back to the state court.  As one court put it:

15

Not one of Defendant's cited cases holding that the government exercised the requisite amount of control to trigger federal officer removal involves an instance of *disposal* of toxic substances ordered produced by the government.  All these cases are personal injury products liability actions in which the actual production of toxic substances ordered by the government gave rise to the alleged harm. In contrast, cases relied upon by NJDEP, which found federal officer removal inappropriate, illustrate the distinction between governmental control over manufacture and production versus disposal. * * *

Accordingly, as Defendant has not offered any evidence supporting its claim that the federal government exercised control over the disposal of hazardous substances, this Court holds that Defendant has not met its burden to demonstrate the requisite causal nexus to invoke the protections of the federal officer removal statute.  Removal was not appropriate pursuant to §1442(a) and the case will be remanded to state court.  *New Jersey Department of Environmental Protection v. Exxon Mobil Corp.,* 381 F. Supp. 2d 398, 404–405 (D.N.J. 2005).[3]

The "activity complained of" under the State's NREPA Part 201 claim is the "release or threat of release" of Commercial AFFF or the "arrange[ment] for disposal or treatment" of Commercial AFFF."  Mich. Comp. Laws § 324.20126(1)(a) & (d).  (ECF No. 1, PageID.89–90.)  The "activity complained of" under the State's NREPA Part 17 claim relates to the "pollution, impairment, or destruction" of the State's "air, water, and other natural resources."  Mich. Comp. Laws § 324.1701(1); (ECF No. 1, PageID.94.)  The "activity complained of" under the State's NREPA

---

[3] See also *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 448 (E.D.N.Y. 2004) (contrasting situations where federal officer jurisdiction existed when federal government had strict control over the development and production of toxic chemicals with situations where the government did not specify how to dispose of the chemical waste and disposal was the basis of plaintiff's claim); *Mobley v. Cerro Flow Prods.*, No. 09-697-GPM, 2010 U.S. Dist. LEXIS 524, at *27 (S.D. Ill. Jan. 5, 2010) ("the record in this case does not show that federal officers dictated the manner in which . . . [the defendant] disposed of chemical wastes or compelled [the defendant] to dispose of those wastes improperly. Instead, the record shows only that [the defendant] acted under the general auspices of a federal officer.").

Part 31 claim is the direct or indirect discharge of Commercial AFFF.  Mich. Comp.

Laws §§ 324.3115(1) and 324.3109(1); (ECF No. 1, PageID.96–97.)  The "activity

complained of" under the State's trespass claim is the "unauthorized direct and

immediate physical intrusion of property" caused by Commercial AFFF.  (ECF No.

1, PageID.99.)  The "activity complained of" under the State's public nuisance claim

is Defendants causing and threatening to cause Commercial AFFF PFAS

contamination of the State's natural resources and property.  (ECF No. 1,

PageID.69.)  Finally, the "activity complained of" under the State's unjust

enrichment claim is the money Defendants have made from Commercial AFFF

which has resulted in PFAS contamination in the State of Michigan.  (ECF No. 1,

PageID.106.)  Defendants were not "acting under" and could not have been "acting

under" the direction of a federal officer or agency for purposes of the federal officer

removal statute as it relates to the "activit[ies] complained of" by the State.

*Pittsburgh Inst. of Aero,* 2008 U.S. Dist. LEXIS at *3–4 (W.D. Pa. June 16, 2008).

The JPML has determined that removing Mil-Spec claims based on activities

that give rise to products liability claims (*i.e.,* the design of Mil-Spec AFFF) is

proper because the defendants intend to raise the government contractor defense

and to argue that they produced Mil-Spec AFFF at the behest of the government.

The State's Commercial AFFF complaint does not concern any such claims.

Commercial AFFF is not Mil-Spec AFFF.  Commercial AFFF is not designed

or produced at the behest of the federal government.  Further, the design and

production of Commercial AFFF is not the activity complained of giving rise to the

State's NREPA claims or common law claims. The State alleges that Defendants violated state environmental laws and state common law because the disposal and release of Defendants' Commercial AFFF has caused contamination of the State's environment and natural resources.

Because Defendants did not dispose of or release Commercial AFFF at the behest of the government, Tyco and Chemguard fail to satisfy the "acting under" prong of the federal officer removal statute and the case must be remanded to state court.

### B. Defendants did not produce and/or sell Commercial AFFF under color of federal office.

To prove the second element, Defendants must show that they performed the actions for which they are being sued "under color of [federal] office." *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). To satisfy this requirement, Defendants "must show a nexus, a causal connection between the charged conduct and the asserted official authority." *Id.* (internal quotations and citations omitted). In other words, the removing party must show that it is being sued because of the acts it performed at the direction of the federal officer. *See Watson,* 551 U.S. at 148; *City of Cookeville v. Upper Cumberland Elec. Membership Corp.,* 484 F.3d 380, 391 (6th Cir. 2007).

Here, Defendants' distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF—which is the alleged cause of the State's injuries and the action for which they are being sued—

*was not* performed and *could not have been* performed at the direction of any federal officers.  Commercial AFFF follows specifications of the UL, not military specifications.  Moreover, Plaintiffs' claims do not arise from the design or production of *any* AFFF.  Defendants, therefore, do not and cannot show any causal nexus between any federal officer's instructions and Tyco's and Chemguard's distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF, as is required by § 1442(a)(1).[4] Moreover, Defendants' reliance on *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y Sep. 20, 2018), and MDL Orders 1–3, are again inappropriate here, as each of those matters dealt with the design and production of Mil-Spec AFFF.  Defendants Tyco and Chemguard have also failed to establish the second element of federal officer jurisdiction, and the case must be remanded to state court.

### C.   Defendants do not have a colorable claim that the government contractor defense applies to the complaint in this matter.

The government contractor defense is an affirmative defense that shields federal contractors from third-party state tort liability for certain defects in products designed and developed for the federal government.  It is a common law doctrine of federal preemption aimed at protecting governmental policy decision-making against collateral attack in the courts.  *In re 3M Combat Arms Earplug*

---

[4] Nor have Defendants offered any factual basis—affidavits, declarations, documents, contracts—for their assertions that their design, manufacture and supply of *any* of their AFFF products—Commercial or Mil-Spec AFFF—was produced or sold under the color of federal office.

*Products Liab Litig,* No. 3:19MD2885, 2020 WL 4275646, at \*7 (N.D. Fla. July 24, 2020), motion to certify app den No. 3:19MD2885, 2020 WL 4756326 (N.D. Fla. August 17, 2020).  The modern formulation of the defense was first recognized and adopted by the Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), in which the father of a Marine pilot who died in the crash of a military helicopter sued the manufacturer of the helicopter, alleging that the helicopter's escape hatch was defectively designed.  *Id.* at \*7.

Under *Boyle*, the federal contractor defense only shields contractors from liability under state law for design defects in military equipment or products where: "(1) the government approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the contractor warned the government about the dangers in the use of the equipment that were known to the contractor but not to the government."  *Id.* at \*9.  "The first two requirements ensure that the government contractor defense is available only when the imposition of state tort liability would frustrate the 'discretionary function' exercised when government officials specify designs for military equipment."  *Id.*  "Together, the three requirements limit the scope of the government contractor defense to those circumstances 'where the government has actually participated in discretionary design decisions, either by designing a product itself or approving specifications prepared by the contractor.'"  *Id.,* citing *Harduvel*, 878 F.2d at 1316.  "Stripped of its essentials, the military contractor's defense under *Boyle* is to claim, '[t]he

Government made me do it.'"  *In re "Agent Orange" Product Liability Litigation*, 304
F. Supp. 2d 404, 432 (E.D.N.Y. 2004).

The northern district of Florida recently provided an instructive discussion of
the *Boyle* factors and the applicability of the federal contractor defense to a private
company in *In re 3M Combat Arms Earplug Products Liab Litig.*, 2020 U.S. Dist.
LEXIS 131951.  There, the court considered the issue of whether 3M and other
defendants were entitled to the federal contractor defense for design defect and
failure-to-warn claims stemming from damages resulting from the plaintiffs' use of
3M's Combat Arms Earplugs (CAEv2).  The defendants manufactured CAEv2 for
the DOD to use to protect its personnel from hearing loss resulting from
occupational noise exposure.  *Id.* at *4.  3M and the defendants argued that they
were "immune from tort liability under state law because the CAEv2 was designed
according to the military's specifications."  *Id.* at *22.  The court disagreed.  In
reaching its conclusion, the court examined the *Boyle* factors and explained:

> [The *Boyle* decision] is predicated on the existence of a federal
> government procurement contract and, in terms of its discussion of the
> uniquely federal interest present in that case, the Court speaks only in
> terms of contract.  More specifically, *Boyle* speaks of contract
> performance and the civil liability that may arise from that
> performance, such that it can be said that the contractor's performance
> is 'sufficiently related to the [government] contract' to warrant federal
> preemption."  [*Id.* at *32.]

"Indeed, nothing explicit or implicit in the *Boyle* holding extends its application to
private companies designing products or otherwise operating without a government
contract."  *Id.*  "Without a contract, the government has not 'validly conferred' any
'authority' on a private company to 'carry out [a] project' on its behalf or otherwise

21

'get[ ] [its] work done.' *Id.,* citing *Boyle,* 487 U.S. at 505–06. "In short, shielding a private company from civil liability in such circumstances would stretch *Boyle* well beyond its reasonably conceivable scope, and the Court declines to do so here." *Id.*

The court went on to find that, "the uniquely federal interests that *Boyle* sought to protect are not implicated in this litigation. Stated differently, whatever federal interests there may be in a products liability dispute between private parties arising from the CAEv2's design, those interests are not 'uniquely' federal within the meaning of *Boyle*." *In re 3M Combat Arms Earplug Prods. Liab. Litig.,* 2020 U.S. Dist. LEXIS 131951, *36–37, CCH Prod. Liab. Rep. P20,943.

In this case, the applicability of the federal contractor defense would be even more tenuous. Most importantly, Plaintiffs' claims do not arise from the design or production of *any* AFFF. The State has not asserted a single product liability claim in its complaint. Plaintiffs causes of action (liability under NREPA, trespass, public nuisance, and unjust enrichment) relate *only* to Defendants' distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use *solely concerning* Commercial AFFF. Defendants make no showing that the circumstances surrounding *any* AFFF, much less Commercial AFFF, would support a government contractor defense. The government contractor defense hinges first on the plaintiffs' assertion of a products liability claim, and second, on the existence of a federal government procurement contract, neither of which is present here.

Instead, Defendants attempt to conflate the design and production of Mil-Spec AFFF (which is not at issue here) with the distribution, sale, release, supply,

transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF, and add allegations to Michigan's Commercial AFFF Complaint that simply do not exist.  Defendants assert that they "have satisfied these elements for purposes of removal. . . .  Naval Sea Systems Command approved reasonably precise specifications, governing **Mil-Spec** AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the **Mil-Spec**."  (ECF No. 1, ¶32, PageID.15 (emphasis added)).  The first glaring flaw with this assertion is that Plaintiffs' claims do not arise from the design or production of *any* AFFF, Mil-Spec or Commercial.  The second is that Mil-Spec AFFF is not at issue in this case.[5]  This case only concerns contamination resulting from the distribution, sale, release, supply, transport, arrangement for disposal or treatment, handling, and/or use of Commercial AFFF, not the design of Commercial AFFF. The United States military has never developed or approved any specifications for Commercial AFFF.  Commercial AFFF, consequently, never complied with any federal military specifications.  Instead, Commercial AFFF complies with UL specifications, which are not approved by the United States military.[6]

---

[5] For this reason, Defendants' continued reference and reliance on *Ayo*, 2018 WL 4781145, and MDL Orders 1-3 is inapplicable here.

[6]  Moreover, for the same reasons, Defendants did not have any federal procurement contracts with the federal government for the design, manufacture or supply of Commercial AFFF.  Upon information and belief, Defendants similarly did *not* have any federal procurement contracts with the federal government for the design, manufacture or supply of Mil-Spec AFFF.  Defendants have provided no proof to the

Lastly, Defendants make no showing that they warned the United States of the dangers of Commercial AFFF, which, in any event, would be improbable because Defendants never provided the United States military with Commercial AFFF.

Even if Defendants could raise a colorable claim that the government contractor defense applies to their design, production, and sale of Mil-Spec AFFF, the design, production, and sale of Mil-Spec AFFF is explicitly excluded from this matter.  PFAS contamination caused by Mil-Spec AFFF is already subject to Plaintiffs' Mil-Spec complaint against Defendants currently pending in the AFFF MDL.  As part of its comprehensive and sophisticated investigation of PFAS contamination throughout its State, Michigan has already delineated many sources of PFAS contamination.  Only Commercial AFFF sources are at issue in this matter.

Defendants Tyco and Chemguard have failed to establish the third element of the federal officer removal statute, and this case must be remanded to state court.

### D.     Allowing Defendants to invoke the federal officer removal statute in this matter does not serve the statute's purpose.

Defendants Tyco and Chemguard, as Commercial AFFF manufacturers, are not the intended beneficiaries of the federal officer removal statute.  Defendants are not federal officers but rather private entities who have been sued based on

---

contrary as their Notice of Removal was devoid of any exhibits beyond Michigan's separate complaints for Commercial AFFF and Mil-Spec contamination.

Michigan state-law claims for actions relating to the release and disposal of Commercial AFFF into the State's environment.  The purpose of the federal officer removal statute is to protect federal officers from state court hostility to the federal government or the enforcement of federal laws.  *Watson*, 551 U.S. at 147–50.  No such protection is warranted here.

Defendants did not design or produce Commercial AFFF at the behest of the federal government.  And even if they did, the State's Complaint "*does not* assert any products liability claims such as defective design, manufacturing defects, labeling defects, or failure to warn."  (ECF No. 1, PageID.36–37) (emphasis original.)  The State's Commercial AFFF Complaint seeks to redress environmental contamination caused by the release or disposal off Commercial AFFF—activities that were not done at the behest of the federal government

Granting Tyco and Chemguard the benefit of the federal officer removal statute under the facts of the current action would extend the statute's benefit beyond its narrow purpose, and would permit any other private entity working in a highly regulated industry to invoke federal officer removal in situations, where, like here, the relationship between a federal officer/agency and a private entity is non-existent.

## III.   Attorneys' fees are appropriate under the circumstances of Defendants' removal.

Section 1447(c) allows a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Such

an award is committed to the discretion of the district court and does not depend on any finding that the removal was in bad faith. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 323 (10th Cir. 1994). An award of fees is appropriate where the removing party had no objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Defendants have no objectively reasonable basis for removing Michigan's complaint. In its Complaint, Michigan asserts only claims arising under Michigan state laws. Defendants argue that the federal officer removal statute provides grounds for removal because Michigan seeks to hold Defendants responsible for costs and damages related to PFAS contamination resulting from Defendants' design, production, and/or sale of AFFF "which were developed for sale to the United States military and others in accordance with the military's rigorous specifications." (ECF No. 1, ¶1. PageID.2.) Defendants later admit, however, that "Plaintiffs allege generally that their claims relate to contamination caused by 'Commercial AFFF' only, and not to contamination caused by 'Mil-Spec AFFF.'" (ECF No. 1, ¶19, PageID.8–9.) Defendants attempt to avoid the fact that this case does not involve Mil-Spec AFFF and cannot invoke the federal office removal statute by asserting a baseless claim that contamination from Mil-Spec AFFF is somehow indivisible from contamination caused by Commercial AFFF. As discussed above, it is not. Defendants have no reasonable basis for removing this matter.

## CONCLUSION

Actions brought by the Attorney General of a state to protect its residents and its environment under state laws is the paradigmatic example of a case that requires exclusive state court jurisdiction.  For the foregoing reasons, this Court should remand this action back to the State of Michigan Circuit Court for the 30th Judicial Circuit, Ingham County, and award the State of Michigan its reasonable attorneys' fees and costs incurred as a result of this removal.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Amy E. Keller*
Adam J. Levitt*
Amy E. Keller (P74015)
Special Assistant Attorneys General
Daniel R. Flynn*
Laura E. Reasons*
Mary McKenna*
Adam Prom
DiCello Levitt Gutzler LLC
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dflynn@dicellolevitt.com
lreasons@dicellolevitt.com
mmckenna@dicellolevitt.com
aprom@dicellolevitt.com

Gregory M. Utter*
Joseph M. Callow, Jr.*
Special Assistant Attorneys General
Matthew M. Allen*
Sarah V. Geiger*
Collin L. Ryan*

Joseph B. Womick*
Keating Muething &
Klekamp PLL
1 East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400
gmutter@kmklaw.com
jcallow@kmklaw.com
mallen@kmklaw.com
sgeiger@kmklaw.com
cryan@kmklaw.com
jwomick@kmklaw.com

Richard W. Fields *
Special Assistant Attorney General
Martin F. Cunniff*
Fields, PLLC
1901 L St., N.W. Suite 700
Washington, D.C. 20036
(800) 878-1432
fields@fieldslawpllc.com
martincunniff@fieldslawpllc.com

Polly A. Synk (P63473)
Danielle Allison-Yokom (P70950)
Assistant Attorneys General
Michigan Department of Attorney
General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
synkp@michigan.gov
allisonyokomd@michigan.gov

* *pro hac vice* motion to be filed

Dated November 19, 2020

## **CERTIFICATE OF COMPLIANCE**

Pursuant to W.D. Mich. LCivR 7.2(b)(ii), Plaintiffs' Brief in Support of Motion to Remand contains 6,814 words excluding the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, affidavits, and this Certificate of Compliance.  The undersigned used Microsoft Word for Office 365 to generate this word count.


*/s/ Daniel R. Flynn*
Daniel R. Flynn